WIGGINTON, Judge.
This is an appeal from final judgment denying a peremptory writ of mandamus.
Appellant, the relator at trial, filed his petition for writ of mandamus to compel the respondent Board to issue a certificate of competency authorizing him to engage in the work, trade or business of master electrician. An alternative writ issued and, upon denial of its motion to quash, respondents answered and denied the material allegations thereof.
In substance it was alleged that relator applied to the respondent Board and, upon paying the required fee, was admitted to examination requisite to the granting of a certificate of competency as a master electrician; that relator and two other applicants were examined on May 28, 1954; that relator passed the examination with a grade in excess of the 75% required by the Board; and, that notwithstanding relator’s compliance with all the applicable law and regulations the Board has wilfully, capriciously and unlawfully failed and refused to issue a certificate of competency.
Respondents’ answer admitted the formal allegations, but denied that relator had passed the examination or that the Board had acted artibrarily. On the contrary, respondents alleged that relator received a grade of 70.4%, which is below that required for passing.
Upon the issue thus formed, evidence was received by the court and the case taken under advisement. Before any decision was reached, relator’s motion to reopen the case for further testimony was granted. Thereafter, the cause was again taken under consideration. The trial court’s denial of relator’s second motion to reopen is among the assigned errors. It being obvious from the foregoing that ample opportunity was afforded relator to submit such evidence as he had in support of his position, and failing to discern any abuse of discretion in such denial we discard this assignment of error as being without merit.
Section 9-2 of the City of Jacksonville Beach Code, duly enacted under the City’s charter powers, provides, in part, as follows "
“(b) Examination and certificate of competency. The board of examiners shall examine all applicants desiring to work at the trade or business of electrical construction * * * The board * * * shall have the right to establish and promulgate rules and regulations for the investigation, application and examination of all electricians doing business in the city * * * Examinations shall be made in whole or in part in writing and shall be of a practical and elementary character but sufficiently strict to test *585 the qualifications of the applicant and to satisfy the board as to the applicant’s ability ~* * * If satisfied as to the competency of such applicant the board shall issue to him a certificate of competency * * *.
“(c) Scope of examination * * * Examinations of master electricians shall he * * * more broad and technical in scope [than those for journeyman and maintenance electricians] and may cover details of construction which are not fully covered by the National Electrical Code or the provisions of this article * * N’[1]
From the evidence adduced it appears that all examination papers were graded uniformly and in accordance with rules promulgated by the lawfully established and duly appointed Board, acting both individually and as a group. All questions taken from the National Electrical Code were graded in accordance with answers given in the Code itself, and answers to hypothetical or work questions were considered in accordance with principles set forth in the Code and other authoritative texts. The conclusion that relator had failed to. earn a passing grade was unanimous.
At relator’s request, his paper was regraded by the Board after which the previous failing grade was confirmed. Relator was promptly advised that if he cared to have it done, the Board would consent to his examination being checked by the City’s consulting engineers, after which the Board would reconsider any differences as to the grades awarded. No further action appears to have been seasonably taken by the relator in response to this notice and offer. On March 20, 1956, some twenty-two months after the date of the challenged examination, the city manager of the City of Jacksonville Beach was notified by the City’s consulting engineers that relator’s examination had been reviewed by them and awarded a grade of 80.16%. This grade was based upon a consideration of the fact that in their opinion “several questions were capable of more than one interpretation.” In such instances the consulting engineers had awarded full credit when the answer- given was in their opinion adequate for a reasonable interpretation of the question. That the answer given may not have conformed to the actual intent of the question was recognized -by the consultants. This method of grading varied considerably from that employed by the Board.
According to relator, his paper was also given a passing grade by one Tribble, who appears to have been the City’s electrical engineer. While there is no evidence as to the method utilized by Tribble in arriving at a grade for any given question, it is apparent that his system varied greatly from the Board’s. The latter’s assigned grades are both above and below those assigned by Tribble.
Of the fifty questions contained in the examination relator disagreed with the grades given on only sixteen. This disagreement was with the method used in grading the disputed questions, and not with any defect in the question itself.
Based upon the evidence the trial court found relator had failed to demonstrate an abuse of discretion on the part of the respondent Board, and therefore, failed to establish a clear legal right to the relief sought. Thus, the keystone of this appeal is whether such findings constitute error. Unless the relator clearly demonstrated an abuse of discretion by the Board as to its findings concerning his examination grade, he could not establish a clear legal right to the relief sought. This is so for the reason that mandamus does not lie to establish a legal right, but solely to enforce such a right once it is clearly established.[2]
Examining boards such as the one here present are generally constituted *586 and established for the purpose of protecting the public against incompetents who seek to enter the various vocations and professions. Such boards are not vested with arbitrary hegemony over the rights of the individual, but are charged with the duty to administer their rules and regulations equally and justly as between all persons and groups who come within the bounds of their jurisdiction.[3] So long as these boards conduct their examinations fairly and uniformly in accordance with lawful authority and their own rules and regulations, their judgment as to the proper grading of such examinations will not be disturbed, by the courts, unless clearly shown to b“e arbitrary or devoid of logic and reason'.
: It is clear from the evidence in the instant case that the respondent Board, in the -exercise of its lawful authority, determined' that the relator failed to earn a passing grade on its examination. Admittedly there will be questions on examinations of this type for which the amount of credit to be given various answers may differ in the minds of reasonable men. That such condition exists is not alone sufficient cause upon which to bottom an alleged 'abuse of , discretion, particularly when as here the ultimate responsibility for ’ assigning grades to such answers fqlls ,on those who have been duly elected or appointed to the board and whose function it is to issue a certificate of competency only after being satisfied as to the applicant’s entitlement. Under such a circumstance the court will be . extremely reluctant to substitute its judgment for that of the duly authorized board; else the board would be compelled through the judicial arm of mandamus to issue its certificates of competency not in its own discretion, but upon that of the court.
The relator further contends the respondent Board is estopped to deny that he passed the examination in view if its consent to have the City’s consulting engineers review his examination paper and the latter’s finding that he had earned a passing grade. While we may concede for present purposes that the Board could delegate such authority, — a point we do not here decide — we are of the opinion that the Board’s consent to allow others to review relator’s paper, after which review it was to consider any differendes it may find to have merit, by no means constituted a surrender of the Board’s powers and duties so as to render it estopped to assert its findings.
The decisions of our Supreme Court in the two cases [4] upon which relator has placed great stress were rendered on factual situations differing widely from those here present. In each of the cited cases it was either proved or admitted that the relator had in fact passed the board’s examination, and the action sought merely to require the board to perform the ministerial act of issuing the certificate which was there a necessary prerequisite to the practice of dentistry. Relator in the instant case was not seeking judicial assistance for the purpose of requiring the respondent Board to act. Indeed,; the Board had already acted when it found that the relator had failed to pass the disputed examination. Therefore, it becomes clear that the relator' sought to have the court direct the Board as to the manner in which it should exercise its discretion. Such is not the function of mandamus.[5]'
There being no demonstration of error in the trial court’s finding that relator had failed to establish a clear legal right to the relief sought, the remaining assign *587 ments of error are found to be without merit.
Accordingly, the judgment appealed from must be and is hereby affirmed.
STURGIS, C. J., and CARROLL, DONALD K., J., concur.

. Emphasis supplied.

. State ex rel. Long v. Carey, 121 Ela. 515, 164 So. 199.

.York v. State ex rel. Jones, 144 Fla. 216, 197 So. 766.

.York v. State ex rel. Jones, supra note 3; York v. State ex rel. Schwald, 152 Fla. 285, 10 So.2d 813.

.Hunter v. Solomon, Fla.1954, 75 So.2d 803.